**ANNACO, INC., Petitioner,**

v.

**Donald Paul HODEL, Secretary of Interior and Office of Surface Mining and Reclamation and Enforcement, (OSMRE) Respondents,**

**and**

**Linda Phillips, Gene Phillips, George Phillips and Floreen Phillips, Intervenors.**

**Civ. A. No. 87–13.**

United States District Court,
E.D. Kentucky,
at London.

Dec. 22, 1987.

Shelby C. Kinkead, Jr., of Bulleit, Kinkead, Irvin & Reinhardt, Lexington, Ky., for petitioner.

David B. Parks, Sp. Ass't. U.S. Atty., Knoxville, Tenn., William R. Brown, Appalachian Research and Defense Fund of Kentucky, Hazard, Ky., for intervenors.

## MEMORANDUM

SILER, Chief Judge.

This case arises under the Surface Mining Control and Reclamation Act (SMCRA), and is before the Court on several motions. This memorandum addresses the motion by petitioner Annaco for temporary relief and the motion to dismiss or for judgment on the pleadings by respondents Secretary of the Interior and Office of Surface Mining Reclamation and Enforcement (OSMRE). For reasons outlined in this memorandum, Annaco's motion for temporary relief will be denied, OSMRE's motion for judgment on the pleadings will be granted, and this matter will be remanded to the Administrative Law Judge for final agency adjudication.

*Facts*

Following is a chronological recitation of the events that led to the instant action. On June 11, 1985, OSMRE sent a ten-day notice to the Kentucky Natural Resources and Environmental Protection Cabinet (Cabinet), stating that Annaco and four individuals violated "relatedness" provisions. "Relatedness" is defined as mining sites of

two acres or less, so physically and economically related as to constitute one operation of more than two acres, therefore losing the sites' status as two-acre exemptions. When the two-acre exemption is lost, the related sites are subject to the same permitting and reclamation standards as all surface mines. The ten-day notice notified the Cabinet that if it did not take appropriate action within ten days, OSMRE would issue Cessation Orders (CO's). On June 25, 1985, the Cabinet responded that it had already dealt with the situation as a relatedness violation. On July 26 to August 1, 1985, the Cabinet issued CO's to Annaco and the four individuals named in OSMRE's ten-day notice, claiming relatedness violations. The Cabinet's CO's ordered Annaco to reclaim these related sites.

On February 6, 1986, the Cabinet and Annaco entered an agreement to settle concerning relatedness violations of Annaco and ten individuals, including the four named in OSMRE's ten-day notice. On March 26, 1986, the Cabinet issued a CO to Annaco for another relatedness violation concerning one of the four individuals named in OSMRE's ten-day notice, and on April 21, 1986, the Cabinet and Annaco entered an agreement to dismiss concerning this CO. (These two agreements will be collectively referred to as "the settlement.") Annaco states it is in complete compliance with the terms of the settlement. The settlement did not require Annaco to reclaim any of the sites listed in OSMRE's ten-day notice, but did constitute the Cabinet's final response against Annaco concerning these sites.

On February 14, April 22, and September 26, 1986, largely after Annaco had already settled with the Cabinet, OSMRE again inspected the sites, concluded a relatedness violation existed, and issued CO's to Annaco. On October 1, 1986, before an administrative hearing was held, Annaco timely petitioned for a consolidated hearing on the CO's and for temporary relief from the effect of the CO's. (Annaco had previously petitioned for and had been granted temporary relief from one CO.) The Administrative Law Judge (ALJ) granted Annaco's petition for consolidation, but denied the

petition for temporary relief. Annaco then appealed the denial of temporary relief to this Court.

Annaco's appeal is based on two main arguments: 1) OSMRE does not have jurisdiction to issue CO's to Annaco because Kentucky has primacy, and 2) OSMRE is barred from acting under the doctrines of res judicata and collateral estoppel. The Court concludes for the reasons stated in this memorandum that OSMRE does have jurisdiction, and that res judicata and collateral estoppel do not apply. Before discussing the substantive issues, the Court will first address the standard it must use as a reviewer of the ALJ's denial of temporary relief.

*Judicial Review pursuant to 30 U.S.C. § 1276, SMCRA § 526*

The Court has jurisdiction of this action pursuant to 30 U.S.C. § 1276(c), SMCRA § 526(c). (References to U.S.C. will be denoted "Section" and references to SMCRA will be "§.") Section 1276(c), § 526(c) deals specifically with appeals from an administrative denial of a petition for temporary relief:

In the case of a proceeding to review any order or decision issued by the Secretary under this Act, including an order or decision issued pursuant to subparagraph (c) or (d) of section 525 [Section 1275] of this title [ (c) deals with requests for temporary relief] pertaining to any order issued under subparagraph (a)(2), (a)(3), or (a)(4), of section 521 [Section 1271] of this title [ (a)(2) deals with CO's issued by OSMRE on the basis of inspection when there is imminent danger to public health or imminent environmental harm; (a)(3) deals with CO's issued by OSMRE on the basis of inspection when there is not imminent danger to public health or the environment] for cessation of coal mining and reclamation operations, the court may, under such conditions as it may prescribe, grant such temporary relief as it deems appropriate pending final determination of the proceedings if

(1) all parties to the proceedings have been notified and given an opportunity to be heard on a request for temporary relief;

(2) the person requesting such relief shows that there is a substantial likelihood that he will prevail on the merits of the final determination of the proceeding; and

(3) such relief will not adversely affect the public health or safety or cause significant imminent environmental harm to land, air, or water resources.

In this case, as the ALJ denied Annaco's request for temporary relief from OSMRE's CO's issued pursuant to Section 1271(a)(2) and (a)(3), § 521(a)(2) and (a)(3), this Court's authority to review the ALJ's decision is specifically granted. Pursuant to Section 1276(c), § 526(c), therefore, this Court may grant Annaco's request for temporary relief if it finds that the requirements listed at (1), (2), and (3) above are satisfied.

Section 1276(c)(1), § 526(c)(1) has been satisfied, as petitioner Annaco, respondent OSMRE, and intervenors Linville have been notified and been given an opportunity to be heard on the request for temporary relief.

However, Section 1276(c)(2), § 526(c)(2) has not been satisfied, as Annaco has not shown there is a substantial likelihood it will prevail on the merits of the final determination. The merits, as defined by Annaco, are: 1) OSMRE does not have jurisdiction because Kentucky has primacy, and 2) OSMRE is barred from acting because of the doctrines of res judicata and collateral estoppel. The Court's reasoning on these issues will be discussed in the next sections.

Additionally, Section 1276(c)(3), § 526(c)(3) has not been satisfied. In the settlement agreement between the Cabinet and Annaco, the Cabinet required Annaco to undertake several reclamation efforts on the related sites, and Annaco states it is in compliance with these requirements. However, although the settlement agreement includes the permits relevant to this case, it is silent regarding any requirements to re-claim them. Annaco has not shown that it has begun reclamation operations on these sites. Therefore, Annaco has not shown that to grant temporary relief to it from OSMRE's CO's would not adversely affect public health and safety and/or cause significant imminent environmental harm to land, air, or water resources.

*OSMRE's Jurisdiction in Kentucky as a Primacy State*

*A. Primacy*

SMCRA includes requirements and fosters expectations which conflict, especially in the area of primacy. *See* "Surface Mining," *Eastern Mineral Law Foundation Special Institute*, March 21–22, 1986. 30 U.S.C. § 1253, SMCRA § 503 defines primacy as follows:

Each State in which there are or may be conducted surface coal mining operations on non-Federal lands, and which wishes to assume *exclusive jurisdiction* over the regulation of surface coal mining and reclamation operations, except as provided in sections 521 [Section 1271] and 523 [Section 1273] and title IV of this Act, shall submit to the Secretary, by the end of the eighteenth-month period beginning on the date of enactment of this Act, a State program which demonstrates that such State has the capability of carrying out the provisions of this Act and meeting its purposes through

(1) a State law which provides for regulation of surface coal mining and reclamation operations *in accordance with* the requirements of this Act;

\*　　\*　　\*　　\*　　\*　　\*

(7) rules and regulations *consistent with* regulations issued the the Secretary pursuant to this Act. (Emphasis added.)

The latitude apparently allowed by Section 1253, § 503 is partly curtailed by the highly specific requirements of Section 1271(d), § 521(d):

"As a condition of approval of any State program submitted pursuant to section 503 [Section 1253] of this Act, the enforcement provisions thereof shall, at a minimum, incorporate sanctions *no less stringent* than those set forth in this

section, and shall contain the *same or similar* procedural requirements relating thereto...." (Emphasis added.)

"Exclusive jurisdiction," granted in Section 1253,

§ 503, is contradicted by Section 1254(b), § 504(b):

In the event that a State has a State program for surface coal mining, and is not enforcing any part of such program, the Secretary may provide the Federal enforcement, under the provisions of section 521 [Section 1271], of that part of the State program not being enforced by such State.

and by Section 1267, § 517:

Each inspector, upon detection of each violation of any requirement of any State or Federal program or of this Act, shall forthwith inform the operator in writing, and shall report in writing any such violation to the regulatory authority.

and by Section 1271(a)(1), § 521(a)(1):

Whenever, on the basis of any information available to him, including receipt of information from any person, the Secretary has reason to believe that any person is in violation of any requirement of this Act, the Secretary shall notify the State in which such violation exists. If no such State authority exists or the State regulatory authority fails within ten days after notification to take appropriate action to cause said violation to be corrected or to show good cause for such failure and transmit notification of its action to the Secretary, the Secretary shall immediately order Federal inspection of the surface coal mining operation at which the alleged violation is occurring....

SMCRA defines primacy with broad brush strokes in Section 1253, § 503, and then uses a fine-tipped brush in Sections 1254 and 1271, §§ 504 and 521, to limit and more sharply define it. Congress intended to vest in states the primary authority to enforce SMCRA's mining and reclamation standards, and to vest OSMRE with oversight powers. The statute itself, at Section 1202, § 102(m), lists as a purpose to wherever necessary, exercise the full reach of Federal constitutional powers to insure the protection of the public interest through the effective control of surface coal mining operations.

Kentucky has the primary responsibility of enforcing its state standards, which can be no less stringent than those in SMCRA. OSMRE has the responsibility, in an oversight capacity, of enforcing those same standards, as enunciated in SMCRA. Unless OSMRE has authority to enforce mining and reclamation standards when a state does not do so, there is no oversight. One of the purposes of SMCRA is to

establish a nationwide program to protect society and the environment from the adverse effects of surface coal mining operations;....

30 U.S.C. § 1202(a), SMCRA § 102(a). If OSMRE does not have oversight authority, it has no way of insuring that society and the environment are indeed protected. Section 1271(b), § 521(b) provides for OSMRE's oversight by the complete assumption of a state's enforcement role. Section 1271(a), § 521(a), through Section 1254, § 504, provides for OSMRE's oversight by the partial assumption, on a mine-by-mine basis, of a state's enforcement role.

**B.  OSMRE's Jurisdiction in a Primacy State**

1.  Section 1254, § 504

(b) In the event that a State has a State program for surface coal mining, and is not enforcing any part of such program, the Secretary may provide for the Federal enforcement, under the provisions of section 521 [Section 1271], of that part of the State program not being enforced by such State.

The plain language of this statute indicates that OSMRE has the authority to enforce, according to the provisions of Section 1271, § 521, *any part* of Kentucky's program not being enforced by Kentucky.

Additionally, legislative history supports OSMRE's authority to enforce on a mine-by-mine basis in a primacy state. Congress foresaw the probability that the Secretary

would need to take enforcement action, including issuance of CO's, to ensure compliance with the standards of the Act which did not merit elimination of all or part of a State's program. It its report on section 404(b) of S.7 (identical to Section 1254(b), § 504(b) in the final version of the Act), the Senate stated:

> The committee fully intends that under subsection 404(b) the Secretary will use the enforcement authority granted him under subsections 421(a)(1) through (4) [Section 1271(a)(1) through (4), § 521(a)(1) through (4) in the final Act], *if a State with an approved program fails to enforce against an operator who is violating the Act.* (Emphasis added.)

S. Rep. 95–128, 95th Cong. 1st Sess., at 72 (1977).

The discussion of Federal enforcement provisions in the final Senate report on SMCRA provides further support:

> The Federal enforcement system contained in this section, while predicated upon the States taking the lead with respect to program enforcement, at the same time provides sufficient Federal back-up to reinforce and strengthen State regulation as necessary. *Federal standards are to be enforced by the Secretary on a mine-by-mine basis for all or part of the State as necessary without a finding that the State regulatory program should be superseded* by a Federal permit and enforcement program. (Emphasis added.)

S. Rep. 95–128, 95th Cong. 1st Sess., at 88 (1977). The Senate report adopts, verbatim, a statement contained in a prior House of Representatives Committee report, H.R. Rep. 94–896 94th Cong., 2d Sess. at 119 (1976).

*2. Section 1271, § 521*

(a)(1) Whenever, on the basis of any information available to him, including receipt of information from any person, the Secretary has reason to believe that any person is in violation of any requirement of this Act or any permit condition required by this Act, the Secretary shall notify the State regulatory authority, if one exists, in the State in which such violation exists. If no such State authority exists or the State regulatory authority fails within ten days after notification to take appropriate action to cause said violation to be corrected or to show good cause for such failure and transmit notification of its action to the Secretary, the Secretary shall immediately order Federal inspection of the surface coal mining operation at which the alleged violation is occurring....

(a)(2) When, on the basis of any Federal inspection, the Secretary or his authorized representative determines that any condition or practices exist, or that any permit condition required by this Act, which condition, practice, or violation also creates an imminent danger to the health or safety of the public, or is causing, or can reasonably be expected to cause significant, imminent environmental harm to land, air, or water resources, the Secretary or his authorized representative shall immediately order a cessation of surface coal mining and reclamation operations....

(a)(3) When, on the basis of a Federal inspection, which is carried out during the enforcement of a Federal program or a Federal lands program, Federal inspection pursuant to section 502, or section 504(b) or during Federal enforcement of a State program in accordance with subsection (b) of this section, the Secretary or his authorized representative determines that any permittee is in violation of any requirement of this Act or any permit condition required by this Act; but such violation does not create an imminent danger to the health or safety of the public, or cannot be reasonably expected to cause significant, imminent environmental harm to land, air, or water resources, the Secretary or authorized representative shall issue a notice to the permittee.... If ... the Secretary or his authorized representative finds that the violation has not been abated, he shall immediately order a cessation of surface coal mining and reclamation operations....

This enforcement section provides authority for OSMRE to enforce standards in Kentucky as a primacy state through two statutory routes. First, the primacy section, Section 1253(a), § 503(a), provides that states may have exclusive jurisdiction over the regulation of surface mining except as provided in, *inter alia,* Section 1271, § 521. Second, the federal programs section, Section 1254(b), § 504(b), authorizes OSMRE to provide federal enforcement of state programs pursuant to Section 1271, § 521. The enforcement section, Section 1271, § 521 at (a)(1), authorizes OSMRE's inspection if, after ten days, the state has not taken appropriate action; (a)(2) authorizes OSMRE's issuance of a CO on the basis of any inspection if the violation creates an imminent danger; and (a)(3) authorizes OSMRE's issuance of a CO on the basis on an inspection pursuant to, *inter alia,* Section 1254, § 504. The plain language of these sections gives OSMRE jurisdiction to issue a CO to an operator in Kentucky, a state which has achieved primacy. Therefore, OSMRE had authority, pursuant to Sections 1253, 1254, and 1271, §§ 503, 504, and 521, to issue CO's to Annaco. Accordingly, Annaco is not substantially likely to prevail on the merits on the question of OSMRE's jurisdiction, and temporary relief thus may not be granted.

*Doctrines of Res Judicata and Collateral Estoppel*

As additional grounds for granting temporary relief, Annaco argues that the doctrines of res judicata and collateral estoppel preclude OSMRE's enforcement against Annaco, as the Cabinet had already settled with Annaco concerning relatedness violations on these sites.

■ While the doctrines of res judicata and collateral estoppel have the same general objective of judicial finality, the doctrines operate differently.

A fundamental precept of common-law adjudication, embodied in the related doctrines of collateral estoppel and res judicata, is that a "right, question or fact distinctly put in issue and *directly determined by a court of competent jurisdiction* ... cannot be disputed in a subsequent suit between the same parties or their privies...." [citation omitted] Under res judicata, a *final judgment on the merits* bars further claims by parties or their privies based on the same cause of action. [citation omitted] Under collateral estoppel, once an issue is actually and necessarily *determined by a court of competent jurisdiction*, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation. [citation omitted] (Emphasis added.)

*Montana v. United States,* 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979). In the instant case, neither res judicata nor collateral estoppel applies, as the settlement agreement was an administrative action, rather than a final judgment by a court of law. *Id.*

■ Furthermore, the settlement agreement was not achieved through a decision by an impartial judge after hearing arguments by Annaco on the one hand, and the Cabinet on the other hand. Rather the settlement was achieved through discussion between Annaco and the Cabinet. Such a procedure, while not impairing the validity of the settlement agreement, does necessitate negotiation, so that neither side would have pursued its position as vigorously as in an adversarial proceeding. Therefore the issues did not receive a full and fair litigation. The absence of a full and fair litigation of the issues precludes the application of the doctrines of res judicata and collateral estoppel. *Montana,* 440 U.S. at 153, 99 S.Ct. at 973; *Lawlor v. National Screen Service Corp.,* 349 U.S. 322, 326, 75 S.Ct. 865, 867, 99 L.Ed. 1122 (1955). *See Solar Sources Inc.,* OHA Docket No. CH 5–20–R (ALJ Miller, Aug. 30, 1985); *June Elswick,* OHA Docket No. NX 5–87–R (ALJ Miller, May 29, 1985); *Clemens Coal Co.,* OHA Docket Nos. TU 5–24–R et al., (ALJ Mesch, Oct. 24, 1985) (denying application of res judicata or collateral estoppel because of lack of a final adjudication by a court of law). *See generally* 1B Moore's Federal Practice ¶¶ 0.405, 0.441 (2d ed. 1984).

Res judicata does not apply for the additional reason that the Kentucky Cabinet and OSMRE are not in privity in this action. Black's Law Dictionary defines "privity" as "such an identification of interest of one person with another as to represent the same legal right." (Abridged 5th ed., 1983). In this case there is no identification of interest of OSMRE with the Cabinet. OSMRE's interest is that Kentucky has acted inappropriately in responding to the relatedness violations. Kentucky's interest is that it has acted appropriately. Therefore, in this action, the Cabinet and OSMRE are not in privity, as their interests are not the same.

Collateral estoppel does not apply for the additional reason that there is no indication whether the facts sought to be established by estoppel (that the permits involved in the instant case are not related) were actually litigated and determined in the prior action. In *United States v. International Bldg. Co.*, 345 U.S. 502, 506, 73 S.Ct. 807, 809, 97 L.Ed. 1182 (1953), in denying collateral estoppel effect to a consent judgment, the Supreme Court stated as a general proposition that

> unless we can say that [the consent judgment was] an adjudication of the merits, the doctrine of estoppel by judgment would serve an unjust cause; it would become a device by which a decision not shown to be on the merits would forever foreclose inquiry into the merits. Estoppel by judgment includes matters in a second proceeding which were actually presented and determined in an earlier suit.... A judgment entered with the consent of the parties may, involve a determination of questions of fact and law by the court. But unless a showing is made that that was the case, the judgment has no greater dignity, so far as collateral estoppel is concerned, than any judgment entered only as a compromise of the parties.

As the settlement between Annaco and the Cabinet does not mention any of the permits that are the subject of the instant action, there is no indication whether these permits were discussed or to what end.

Therefore the doctrine of collateral estoppel is inapplicable to the instant case.

Annaco relies on *United States v. ITT Rayonier, Inc.*, 627 F.2d 996 (9th Cir.1980), for the proposition that the doctrines of res judicata and collateral estoppel apply to a case in federal court between the federal agency and a company, when the same case between the analogous state agency and the same company has been decided by the state. However, there are two important differences between *Rayonier* and the instant case. First, *Rayonier* involved a decision by the state of Washington's Supreme Court; this case involves an agency settlement. Second, in *Rayonier*, both the state's Department of Ecology and the federal Environmental Protection Agency espoused the same position in the state proceedings:

> It is undisputed that DOE maintained the same position as the EPA before the state hearings boards and state courts. [cite omitted] The EPA does not contend that DOE failed to assert vigorously its position in the state proceedings.

*Rayonier*, 627 F.2d at 1003. In the instant case, the Cabinet and OSMRE have not maintained the same position. OSMRE ordered Annaco to reclaim the sites, but the Cabinet did not. It was the Cabinet's decision not to require reclamation that prompted OSMRE to issue CO's to Annaco requiring reclamation.

For the reasons stated above, Annaco is not likely to prevail on the merits on either the jurisdiction issue, or the res judicata/collateral estoppel issue. Therefore Annaco has not satisfied Section 1276(c), § 526(c), and its petition for a reversal of the ALJ's denial of temporary relief will be denied. For the reasons stated above, OSMRE's motion for judgment on the pleadings will be granted.

### ORDER

This case comes before the Court on Annaco's petition for Temporary Relief, OSMRE's motion for Judgment on the Pleadings, and Annaco's motions to Transfer the Consolidated Records and to Stay Proceedings before the Department of In-

terior. The pleadings do not present any questions of fact, and, as the questions of law have been ably briefed by the parties, the Court does not need the consolidated record from the Department of Interior. Furthermore, the Court sees neither the necessity nor any justification for staying proceedings before the Department of Interior. It is therefore

ORDERED AS FOLLOWS:

1) Petitioner's motion for an Order to Transfer Consolidated Records be and is denied.

2) Petitioner's motion for an Order to Stay Proceedings before the Department of Interior be and is denied.

In accordance with the Memorandum of even date, it is hereby

FURTHER ORDERED AS FOLLOWS:

3) Petitioner's motion for Temporary Relief be and is denied.

4) Respondents' motion for Judgment on the Pleadings be and is granted.

5) This matter be and is remanded to the Administrative Law Judge for final agency determination.