518 F.Supp. 576 (1981)
MISSOURI-INDIANA INVESTMENT GROUP, Plaintiff,
v.
Obie SHAW, et al., Defendants.
No. 79-1181C(1).
United States District Court, E. D. Missouri, E. D.
June 30, 1981.
*577 Lawrence J. Fleming, St. Louis, Mo., for plaintiff.
Edwin D. Akers, Jr., St. Louis, Mo., for defendants.

MEMORANDUM
WANGELIN, Chief Judge.
This matter is before the Court for a decision following a three-day bench trial held August 25 through August 27, 1980, with further proceedings being held December 2, 1980. This action was initially filed in the Circuit Court of the City of St. Louis, and removed to this Court pursuant to 28 U.S.C. § 1441 and § 1332. This is an action for injunctive relief, money damages in the amount of Four Hundred and Twenty Five Thousand Dollars ($425,000) and an accounting arising out of the alleged breach of contract between the parties. On August 29, 1980, this Court entered an order requiring the withdrawal of Edward C. Cody and the firm of Klutho, Cody and Kilo Attorneys, Inc. as counsel for plaintiff pursuant to Missouri Supreme Court Rules DR 5-101 and DR 5-102. After allowing plaintiff sufficient time to obtain other counsel, the trial resumed on December 2, 1980 on which date this Court sustained defendant's motion for directed verdict in favor of defendants at the close of plaintiff's evidence pursuant to Rule 50(a) of the Federal Rules of Civil Procedure.
After consideration of the testimony adduced at trial, the exhibits introduced into evidence, the briefs of the parties, and the applicable law, the Court hereby makes and enters the following findings of fact and conclusions of law. Any finding of fact equally applicable as a conclusion of law is hereby adopted as such and, conversely, any conclusion of law applicable as a finding of fact is adopted as such.

Findings of Fact
1. Plaintiff, Missouri-Indiana Investment Group, is a Missouri limited partnership, and Robert E. Smith is the general partner thereof. Defendant, Management of Energy Resources, (hereinafter MER) is an Indiana partnership and neither Obie Shaw nor Gene Silkey are residents of Missouri. Plaintiff produced on its behalf its general partner, Robert E. Smith, and its counsel, Edward C. Cody, as witnesses in this matter. After two unsuccessful efforts to obtain coal mining leases and engage in the production and mining of coal, Smith, Shaw and Silkey investigated a particular venture in Fountain County, Indiana, and *578 such appeared to be worthy of acquisition and operation.
2. Smith had his attorney, Edward C. Cody, form a Missouri limited partnership in early April, 1978, Smith being the general partner of this partnership (the plaintiff). Approximately Three Hundred Thousand Dollars ($300,000) was raised by the plaintiff partnership for the purpose of engaging in the coal mining business and eventually some Four Hundred and Twenty Five Thousand Dollars ($425,000) was invested in the venture by plaintiff, this being the amount prayed for in plaintiff's complaint.
3. Concurrently and also at Smith's request, Cody was to draft an agreement between the plaintiff and the defendants Shaw and Silkey, d/b/a Management of Energy Resources, concerning the acquisition and operation of the Fountain County coal property. This document was drafted and prepared between August 5 and August 8, 1978, and the principals were to appear in the offices of Mr. Cody on April 8, 1978 for the purpose of executing this document then labeled a "Sale and Leaseback Agreement". Shaw and Silkey were not represented at that time by independent counsel and did execute this contract at that time and place.
4. Later that same day, Robert Smith, general partner of the plaintiff partnership, presented to Shaw and Silkey for their execution a second previously prepared written partnership agreement. Mr. Cody was unaware and was uninformed by Mr. Smith of the existence of this agreement between Smith, Shaw and Silkey until some time later. Mr. Cody was not aware of the existence of this agreement until late in 1978 and testified that he would have been very concerned about Smith's involvement on both sides of the contract now being sued on.
5. This secret partnership agreement provided that the three should be equal partners under the name of Management of Energy Resources "which shall be a limited partnership organized and existing under Indiana law". Paragraph 2 of this partnership agreement designates Shaw as the general partner, paragraph 3 outlines the purpose of the partnership as being the bidding on and operating coal lands, installing and operating a tipple in the Dubois, Indiana area, and any other ventures agreed to by all partners. No other written agreement of partnership related to the Management of Energy Resources other than a past agreement concerning a different project was in existence. No written dissolution has ever been executed as to this secret agreement.
6. The uncontested evidence in this cause indicates that Robert Smith by virtue of the secret agreement was an equal partner in the defendant Management of Energy Resources, and also the general partner of the Missouri-Indiana Investment Group, the plaintiff in this case.
7. The Sale and Leaseback agreement executed by the parties on April 8, 1978 provided that the plaintiff would provide funds for and defendants would purchase equipment, leases and mining racks to the Fountain County property from its then existing owner, Mr. Robert Tatge, or various corporations owned and controlled by Tatge. All right, title and interest to the leases were to be transferred to plaintiff by defendant and plaintiff was to sublet the leases back to defendants. The mining was to be operated by defendants, and defendants were to pay plaintiffs a royalty on the coal extracted. The agreement contained in paragraph 9 the provision whereby in the event of default by the defendants, the plaintiffs reserved the right to terminate the agreement on ten days written notice and evict the defendants from the premises. Paragraph 13 of the agreement provided that the agreement was contingent upon the execution of a contract with Mr. Tatge or corporations owned by him with respect to the rights being acquired by defendants from Tatge.
8. From all the evidence adduced and offered at trial it is clear that no agreement was carried through with Tatge, and the rights to be acquired which were contemplated under the Sale and Leaseback agreement were never obtained. On April 11, *579 1978 a meeting was held wherein Mr. Cody, Mr. Smith, Mr. Shaw, Mr. Silkey and Mr. Tatge and his attorney met in Danville, Illinois, and reached an agreement as to the rights and the leases and mining equipment. Shaw and Silkey were at that time not represented by independent counsel. Mr. Cody reviewed and approved all the documentation and after the execution of the agreement Mr. Tatge was paid One Hundred Thousand Dollars ($100,000) as a partial payment for the interest being acquired. These funds had been advanced by plaintiff to defendants.
9. The defendants never acquired that which it contracted for in the arrangement with Mr. Tatge. Subsequent to litigation between Tatge and defendants when Mr. Cody represented the defendants' interests, Mr. Cody prepared an itemized list of the various items of default by Tatge and his Prairie Creek Corporation. Later Mr. Cody advised defendant Silkey to stop making payments to Tatge since various items of the documentation required under the contract were not forthcoming.
10. Notwithstanding Mr. Cody's testimony that he was not aware of the secret agreement between Smith, Shaw and Silkey, Mr. Cody in fact had represented and had given advice to the defendants from the inception of this contract until the end of 1978. Viewed in light of the surrounding circumstances and Mr. Cody's undisputed representation of defendants through advice, letters written on their behalf, and other correspondence before this Court, Shaw and Silkey reasonably came to rely on Mr. Cody for legal advice and counsel throughout the course of these events. Evidence before this Court indicates that even after Mr. Cody made the representation to an Indiana Circuit Court that he could not represent the defendants, he continued to hold himself out as their legal representative, including making several trips to the project site in Indiana to discuss its problems, seeking removal of trespassers from the property, and writing letters on their behalf.
11. Mr. Robert Smith, the general partner of the Missouri-Indiana Investment Group, was involved with the operations of the defendants even more substantially than was Mr. Cody. In addition to the secret partnership agreement with Shaw and Silkey, it is clear from his own testimony that he was closely involved with the day to day operation of the mining properties and had extensive access to the expenditure of funds in accounts established in the name of Management of Energy Resources at the Old National Bank in Evansville, Indiana. Mr. Smith stated that he personally had total control over Account Number 1 at said bank, an account into which all the investment funds were placed; funds which were contributed by the various partners in the plaintiff partnership. The evidence indicates that a total of Three Hundred Thousand Dollars ($300,000) was raised in order to purchase the necessary leases and equipment from Mr. Tatge as well as to apply operating funds for the defendant partnership. Mr. Smith occasionally advanced these funds from Account Number 1 into Account Number 2, which was the operating account of the partnership. Mr. Smith had at least occasional access to Account Number 2 and in one case wrote a check to a Mr. Edward E. Curtis III on June 2, 1978 to be used as a partial purchase price of a condominium which he purchased and titled in his own name. He further received approximately Thirteen Thousand Dollars ($13,000) by checks drawn on Account Number 2, such checks being executed by Mr. Silkey. These funds were also used for Mr. Smith's personal expenses.
12. Mr. Smith took part in decisions concerning the day to day operations of the coal mining operation including which contract miners to employ in order to extract the coal. Mr. Smith and Mr. Cody exercised substantial control over Management of Energy Resources in attempting to solve the problems experienced in the management of the coal mine, largely without success. Defendants failed to pay any of the royalties provided for in the agreement of April 8, 1978 and in fact very little coal was ever mined from the property and very few *580 sales ever made. Messrs. Cody and Smith's involvement with defendant partnership is further evidenced by the fact that Mr. Smith has a personal loan with the bank which was in default as of August of 1980. Mr. Cody wrote the bank a letter requesting the bank to apply the interest accrued on certificates of deposit held by the bank in the name of the Management of Energy Resources to the defaulted loan owed by Mr. Smith to the bank. Mr. Smith testified that the certificates of deposit were in the name of Management of Energy Resources and that the defendant Shaw had advanced all the funds used to purchase these certificates. The text of this letter indicates that Mr. Cody represented to the bank that Smith had some interest in these funds.
13. On April 16, 1979, Mr. Robert Smith acting pursuant to paragraph 6(1) of the agreement between the parties executed an assignment in favor of the plaintiff partnership of all the properties and leases and later took possession of all property on behalf of the plaintiff and attempted to continue the mining activities on behalf of the plaintiff. These attempts again were without success.
14. The failure of defendants to receive much of the property which it contracted for with Mr. Tatge prevented defendants from performing under the agreement. Various forms of equipment essential to the mining operation were in fact repossessed by prior creditors of Tatge and other equipment was simply never delivered to the defendants. The entire contract under which these items were to be transferred to the defendant partnership was approved by Mr. Cody prior to its execution on April 11, 1978.

Conclusions of Law
This Court has jurisdiction over the parties and the subject matter of this suit pursuant to 28 U.S.C. § 1332.
In the Sale and Leaseback Agreement between these parties there contains in paragraph 13 the following provision:
This Agreement is contingent on MER executing a contract with the present owner of the mine and equipment (Mr. Robert Tatge or one or more corporations owned by him) which contract must be in a form acceptable to Missouri.
This Court is aware that the law in general does not favor conditions precedent and courts will not construe contract provisions to be such unless required to do so by plain, unambiguous language or by necessary implication. Kansas City Southern Railway Co. v. St. Louis-San Francisco Railway Co., 509 S.W.2d 457, 460 (Mo.1974). Nevertheless, this Court finds paragraph 13 of the Sale and Leaseback Agreement to be a clear and unambiguous manifestation of the intention of both parties to make the contract binding only if the mine and equipment of Mr. Tatge was received by MER. The provision requiring that MER "execute a contract" requires MER to enter into a contract in which nothing remains to be done by either party. Ennis v. Ring, 49 Wash.2d 284, 300 P.2d 773, 776 (1956). Although MER attempted to purchase the mine and various forms of coal mining equipment from Mr. Robert Tatge, Tatge totally failed to deliver the vast majority of the items which MER bargained for. Mr. Edward Cody at that time was acting in his capacity as counsel for both the defendant partnership and counsel for the plaintiffs and bears responsibility for not making examination of the leases, titles and various documents which affected the transferability of this equipment to MER. Shaw and Silkey came to rely on Mr. Cody as representing their interests with respect to this agreement with Tatge. The performance under the agreement by Tatge was a material portion of the Sale and Leaseback Agreement and also was a valid condition precedent and as such whether that condition was express, implied, or constructive, there is no duty of performance and there can be no breach of that contractual duty by mere non-performance, unless the condition precedent is either performed or excused. Corbin on Contracts, § 1252 (1 Vol.Ed. 1952). Therefore the contractual duties of the defendants are discharged by the failure of this condition and their nonperformance *581 is not an actionable wrong to the plaintiffs.
The supposed Sale and Leaseback Agreement viewed in light of the fact that Mr. Robert Smith was essentially on both sides of the transaction and that Mr. Edward Cody was representing both parties hardly conforms to the traditional view of a contract as a transaction at arms length between two separate and independent parties. Smith, Shaw, Cody and Silkey can best be characterized as participating in a joint venture as to the mining properties. Joint ventures arise from contractual relations, but may be established without specific formal agreement and may be implied or proved by facts and circumstances, Pigg v. Bridges, 352 S.W.2d 28, 33 (Mo.1961). The relationship between these parties can be defined as an association of two or more persons to carry out a single business enterprise for profit, for which purpose they combine their property, money, effects, skill and knowledge. Scott v. Kempland, 264 S.W.2d 349, 354 (Mo.1954). Plaintiff agreed to supply the capital necessary to purchase and operate the mining property and defendants were to carry out the day-to-day mining activity. Plaintiff maintained and exercised significant control over the operation and actively participated in all aspects of defendants' Indiana operation. Further, the secret agreement between Shaw, Silkey and Smith serves to remove any doubt that the parties to this transaction were not operating at an arm's length cannot be fairly characterized as opposing parties to a binding contract, but rather operating as a team to achieve a mutually desirable end.
Although there contained in the Sale and Leaseback Agreement a provision whereby Obie Shaw and Gene Silkey executed the document in their capacity as guarantors of MER's performance, the law is clear that without the principals having incurred liability, there is no basis for holding the guarantor liable. Beauchamp v. North American Savings Association, 543 S.W.2d 536, 538 (Mo.App.1976). Since this Court's holding that there has been a failure of the condition precedent to the contract, as well as that this entire enterprise was a joint venture, Silkey and Shaw's status as guarantors do not expose them to liability for breach of contract.
Defendant argues that it has been judicially determined that Smith was not a member of Management of Energy Resources insofar as the agreement with Robert Tatge and the Prairie Creek Corporation. In support of this argument defendants submit a copy of the civil docket sheet of the Fountain, Indiana Circuit Court in related litigation which contains the entry in part on July 27, 1978.
Now the defendant Smith moves to dismiss this case, and by agreement of the parties, this cause is dismissed as to said defendant, it being agreed that said defendant is not a member of the defendant partnership.
Plaintiff argues that the doctrine of collateral estoppel precludes defendants from asserting that Smith was a member of their partnership. This docket entry states only that it was agreed by the parties that Smith was not a member of the defendant partnership and there is no indication that evidence was taken on this point. The Eighth Circuit Court of Appeals has recently outlined the requirements of collateral estoppel as being (1) the issue was identical to one in a prior adjudication; (2) there was a final judgment on the merits; (3) the estopped party was a party or in privity with the party to the prior adjudication; and (4) the estopped party was given a full and fair opportunity to be heard on the adjudicated issue. Oldham v. Pritchett, 599 F.2d 274, 279 (8th Cir. 1979). Since it is clear from the documents submitted by plaintiff that the cause in Indiana Circuit Court never reached final judgment, that agreements by the parties do not give rise to an estoppel, and that copies of a docket sheet are not sufficient evidence of court action taken or findings made as to issues or facts in a lawsuit, an estoppel does not arise here. It cannot be said that the defendants are currently estopped from asserting that Smith was a member of their partnership. This Court also notes that at the time this finding *582 was made by the Indiana Circuit Court a so-called secret agreement between Shaw, Silkey and Smith was not before the Court.
It is therefore certain that plaintiff has not made out a case for breach of contract against these defendants and that the claim for damages and an accounting must fail.