In re Jeanne Marie MASON, Debtor.

**PHOENIX BOWLING CORPORATION, Plaintiff,**

v.

**Jeanne Marie MASON, Defendant.**

**Bankruptcy No. 94–20184–C.**
**Adv. No. 94–2013–C.**

United States Bankruptcy Court,
W.D. Missouri.

Dec. 22, 1994.

Ronald S. Weiss, Berman, DeLeve, Kuchan & Chapman, Kansas City, MO, for plaintiff.

Fred Dannov, Columbia, MO, for debtor, defendant.

### ORDER HOLDING DEBT TO BE NONDISCHARGEABLE

FRANK W. KOGER, Chief Judge.

This matter is before the Court on the complaint filed by Phoenix Bowling Corporation (Phoenix) to determine the dischargeability of an obligation owed to it by the debtor Jeanne Marie Mason, a/k/a/ Jeanne Marie Campoli, a/k/a Jeanne Marie Towner.

After reviewing the evidence produced at trial and the briefs of the parties, the Court determines that Phoenix's $30,000 claim, based on a Colorado consent judgment entered against Mason, is nondischargeable in bankruptcy under 11 U.S.C. § 523(a)(4).

### FACTS

On March 18, 1994, Mason filed a Chapter 7 bankruptcy petition. In her schedules, Mason listed Phoenix as an unsecured nonpriority creditor with a $30,000 claim. The deadline for creditors to file a complaint to determine dischargeability of debt was June 21, 1994. On June 20, 1994, Phoenix filed a complaint to determine dischargeability of the $30,000 obligation owed to it by Mason that was based on a consent judgment entered against Mason on December 28, 1993, in the District Court of Summit County, Colorado. Phoenix alleged that the obligation was nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A), (a)(4), and (a)(6).

A trial was held on September 22, 1994. The testimony and documentary evidence produced at trial reveal the following facts. Phoenix owns and operates the Summit Bowling Center in Dillon, Colorado. The bowling alley has 18 lanes, a restaurant, and a bar. Gross revenues from operation of the bowling alley range from $450,000 to $500,000 per year. On September 16, 1992, Phoenix, acting through Samuel H. Brown, employed Mason as the general manager of the bowling alley. Phoenix placed Mason in charge of all the financial aspects of the bowling alley, including the authority to sign business checks up to and including the amount of $500. Mason's salary was $14,000 per year plus ten percent of net profits after one year.

Brown testified that the accountant for the bowling alley prepared month-end statements for the business. In November, Phoenix received its first accounting report since employing Mason, which showed that beginning in September Mason wrote several checks on the bowling alley's checking account that were made payable to herself. There were no receipts to support the checks that Mason wrote. Brown discussed the sit-

uation with Mason who stated she would correct the problem, but the check-writing continued. Brown testified that during the course of her employment with Phoenix Mason wrote a total of 20 to 25 checks made payable to herself on the bowling alley's checking account that were not for salary and were unsupported by receipts.

On February 6, 1993, it came to Brown's attention that Mason was closing out the bowling alley's three cash registers prior to closing the bowling alley. When confronted by Brown, Mason admitted closing out the cash registers early and contended that she had put the money that was received by the bowling alley after the registers were closed into envelopes and then placed the envelopes in the bowling alley's safe. This practice had gone on for at least ten weeks. The estimated amount in the envelopes ranged from $50 to $100 per night, except on weekends and during prime times when the amount was estimated to be closer to $200 per night. Brown could not determine the exact amount taken in by the bowling alley after Mason closed out the cash registers early. The envelope funds were not deposited in the bowling alley's checking account. · Brown asked Mason where the missing envelope funds were. Mason stated that she used the money to pay the window cleaner, pay the disc jockey, and fill the change machine in the bowling alley. The disc jockey allegedly paid by Mason later called Brown requesting payment.

It also came to Brown's attention that Mason had taken home for her personal consumption, food and liquor that she had ordered for the bowling alley. The bowling alley paid the vendors for the purchased food and liquor. Mason did not pay the bowling alley for the food and liquor that she had taken home. Mason admitted doing so and later returned some of the food that she had taken and stored in her freezer.

Brown testified that Mason took approximately $25,000 in cash; took food and liquor valued at $2000; wrote $4000 in checks to herself that were not salary; and made $600 in telephone calls from the business. Brown made it clear that the foregoing figures were estimates and the exact amount taken by Mason is still unknown.

On February 8, 1993, Phoenix fired Mason. Subsequently, Phoenix filed a civil suit against Mason in the District Court of Summit County, Colorado. The parties held a settlement conference on December 1, 1993, during which they tried to determine exactly how much Mason took, but could not do so and eventually agreed to settle for $30,000. On December 28, 1993, a judgment was entered against Mason in the amount of $30,-000. The order reads:

IT IS HEREBY ORDERED, that judgment shall enter in favor of the Plaintiff, Phoenix Bowling Corporation, and against the Defendant, Jeanne Campoli, in the principal amount of Thirty Thousand Dollars ($30,000.00).

THE COURT specifically finds and determines that the judgment herein entered in favor of the Plaintiff and against the Defendant is based on the Defendant's confession of the pleadings herein. Accordingly, the basis for the judgment in favor of Plaintiff is based on Plaintiff's claims for conversion, negligence, gross negligence and breach of fiduciary duty.

IT IS FURTHER ORDERED, that all Counterclaims filed by Defendant against Plaintiff herein are hereby dismissed with prejudice.

Mason did not appeal from this judgment, either on its merits or on the amount of damages.

## DISCUSSION

11 U.S.C. § 523(a)(4) states in relevant part that a discharge under section 727 of the Bankruptcy Code does not discharge an individual debtor from any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." "In order to succeed on a dischargeability objection under section 523(a), the objecting party has the burden of proving each element by a preponderance of the evidence." *In re Casagrande*, 143 B.R. 893, 896 (Bankr.W.D.Mo. 1992) (citing *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991)).

The Court's independent examination of the facts produced at trial shows that Phoenix proved that Mason embezzled cash, food, and liquor from the bowling alley. *See In re Belfry,* 862 F.2d 661, 662 (8th Cir.1988) (For purposes of section 523(a)(4), embezzlement is the "'fraudulent appropriation of property of another by a person to whom such property has been entrusted or into whose hands it has lawfully come.'"). *See also In re Bryant,* 147 B.R. 507, 512 (Bankr.W.D.Mo. 1992); *Casagrande,* 143 B.R. at 898; *In re Beasley,* 62 B.R. 653, 654 (Bankr.W.D.Mo. 1986).

■ The rules of res judicata do not prevent the Court from independently reviewing the evidence to determine dischargeability despite the consent judgment. *See Brown v. Felsen,* 442 U.S. 127, 138–39, 99 S.Ct. 2205, 2213, 60 L.Ed.2d 767 (1979); *In re Comer,* 723 F.2d 737, 740 (9th Cir.1984).

■ Additionally, in this case the principles of collateral estoppel do not operate to prohibit the Court from making an independent inquiry into the nature of the indebtedness. In *In re Miera,* 926 F.2d 741, 743 (8th Cir.1991), the Eighth Circuit Court of Appeals set forth the four elements that must exist to bar relitigation of an issue in a subsequent proceeding:

(1) the issue sought to be precluded must be the same as that involved in the prior action;

(2) the issue must have been [actually] litigated in the prior action;

(3) the issue must have been determined by a valid and final judgment; and

(4) the determination must have been essential to the prior judgment.

*See also Lovell v. Mixon,* 719 F.2d 1373, 1376 (8th Cir.1983); *In re Day,* 137 B.R. 335, 338 (Bankr.W.D.Mo.1992).

■ Collateral estoppel principles do apply in discharge exception proceedings brought under section 523(a). *Grogan v. Garner,* 498 U.S. at 284 n. 11, 111 S.Ct. at 658 n. 11; *In re Olson,* 170 B.R. 161, 165 (Bankr.D.N.D.1994) ("The use of collateral estoppel in dischargeability proceedings under § 523(a) is, however, subject to the caveat that it be applied with great care since

bankruptcy courts are vested with the exclusive jurisdiction to determine the nondischargeability of debts.").

■ Here, the state that rendered the consent judgment was Colorado. Pursuant to the full faith and credit doctrine that is codified in 28 U.S.C. § 1738 "'a federal court must give to a state court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered.'" *In re Poole,* 148 B.R. 49, 50 (Bankr.E.D.Mo.1992) (quoting *In re Byard,* 47 B.R. 700, 701–702 (Bankr. M.D.Tenn.1985)). 28 U.S.C. § 1738 "extends to both issue preclusion (or collateral estoppel) ... and claim preclusion (or res judicata)." *Harrison v. Springdale Water & Sewer Comm'n,* 780 F.2d 1422, 1431 (8th Cir.1986). "Section 1738 commands the federal court to ask whether the rendering state would afford the judgment full faith and credit." *In re Holiday Interval, Inc.,* 114 B.R. 177, 180 (Bankr.W.D.Mo.1989).

■ "In the case of a judgment entered by confession, consent, or default, none of the issues is actually litigated." Restatement (Second) of Judgments § 27 comment e (1982). However, the federal courts of Colorado recognize that under Colorado law "[a] consent judgment ... can constitute a final adjudication on dischargeability issues [and] ... can have collateral estoppel effect on the Bankruptcy Court." *In re Austin,* 93 B.R. 723, 727 (Bankr.D.Colo.1988). *See In re Hansen,* 131 B.R. 167, 170 (D.Colo.1991), *aff'd,* 977 F.2d 595 (10th Cir.1992). In *Varsity Amusement Co. v. Butters,* 155 Colo. 330, 394 P.2d 603, 607 (1964) (quoting *United States v. International Building Co.,* 345 U.S. 502, 73 S.Ct. 807, 97 L.Ed. 1182 (1953)), the Supreme Court of Colorado sitting en banc opined with respect to collateral estoppel that:

[U]nless we can say that [the judgments] were an adjudication of the merits, the doctrine of estoppel by judgment [, or collateral estoppel,] would serve an unjust cause: it would become a device by which a decision not shown to be on the merits would forever foreclose inquiry into the merits.... A judgment entered with the

consent of the parties may involve a determination of questions of fact and law by the court. But unless a showing is made that that was the case, the judgment has no greater dignity, so far as collateral estoppel is concerned, than any judgment entered only as a compromise of the parties.

 Further, "[c]onsent judgments ... represent a final decision on the merits where the parties intended the stipulation of settlement and judgment entered thereon to adjudicate, once and for all, the issues raised in that action." *In re Bottagaro,* 95 B.R. 766, 767 (D.Colo.1987). *See Austin,* 93 B.R. at 727.

In this case, the Colorado state court made no clear and certain findings respecting the elements of conversion, negligence, gross negligence, or breach of fiduciary duty, and certainly did not address the elements of embezzlement required to be met for a finding of nondischargeability under section 523(a)(4). *See Austin,* 93 B.R. at 728–29. Phoenix did not allege embezzlement as a ground for recovery in the civil action. Second, there is no indication from the consent judgment or the transcript of the settlement conference that the parties intended that the consent judgment adjudicate once and for all the issues raised in the civil action. *See Day,* 137 B.R. at 338 ("court should consider the entire record of the prior proceeding in determining whether an issue was actually litigated"); *Bottagaro,* 95 B.R. at 767.

 Since the Court has determined that the nature of the debt from Mason to Phoenix is nondischargeable, all that remains for determination is what amount of the debt should be nondischargeable. The accepted rule is that "[w]hen the nondischargeable *nature* of the debt is established by collateral estoppel or otherwise, a prior default judgment fixing the *extent* of the debt is accorded binding effect to prevent relitigation of the amount of the debt." *In re Spicer,* 155 B.R. 795, 804 (Bankr.D.D.C.1993) (emphasis in original). *See also Comer,* 723 F.2d at 740 (bankruptcy judge properly refused to admit evidence attacking the extent of the obligation because it was irrelevant to determination of dischargeability of default judgment debt). The Court concludes that this rule applies with equal force to consent judgments. Dischargeability is an "'all or nothing' proposition." *In re Tsamasfyros,* 940 F.2d 605, 608 n. 4 (10th Cir.1991) (quoting *In re Gerlach,* 897 F.2d 1048, 1051 (10th Cir. 1990)).

The Court has determined that the nature of the indebtedness is nondischargeable, therefore, the entire $30,000 claim is nondischargeable.

### CONCLUSION

Based on the above discussion, Mason's prepetition judgment debt in the amount of $30,000 owed to Phoenix Bowling Corporation is NONDISCHARGEABLE in bankruptcy under 11 U.S.C. § 523(a)(4).

The foregoing Memorandum Order constitutes Findings of Fact and Conclusions of Law as required by Fed.R.Bankr.P. 7052.

So ORDERED.