**In re Richard D. CHINNERY, Debtor.**

**Maria Alice BRANDENBERGER, Plaintiff,**

v.

**Richard D. CHINNERY, Defendant.**

**Bankruptcy No. 94–42748–2.
Adv. No. 95–4018–2.**

United States Bankruptcy Court,
W.D. Missouri,
Western Division.

May 17, 1995.

Jeffrey Henry, C. Anderson Russell, Stigall, Humphrey, Lucas, Henry, Stigall & Dollar, L.C., Kansas City, MO, for plaintiff.

Howard Levitan, Prairie Village, KS, for defendant.

## ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

FRANK W. KOGER, Chief Judge.

This matter is before the Court on the motion for summary judgment filed by Maria Alice Brandenberger a/k/a Maya Brandenberger in this adversary proceeding. Brandenberger contends that the debtor, Richard C. Chinnery, is collaterally estopped from contesting the nondischargeability of a debt under 11 U.S.C. § 523(a)(2)(A). For the fol-lowing reasons, the Court denies Brandenberger's motion.

### FACTS

On December 3, 1991, Brandenberger filed a three count complaint against Chinnery and Richard Chinnery & Associates, Inc. in the United States District Court for the District of Kansas. Count 1 alleged federal securities fraud in violation of § 10b of the Securities and Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule X–10b–5 of the rules and regulations of the Securities and Exchange Commission, 17 C.F.R. § 240.10b–5; count 2 alleged state securities fraud in violation of Kan.Stat.Ann. § 17–1768(a); and count 3 alleged common law fraud. Chinnery was personally served in the action. Chinnery did not hire counsel, but represented himself in the lawsuit.

On February 25, 1993, Brandenberger filed a motion to enforce settlement agreement in the Kansas district court. In support of her motion, Brandenberger alleged that after some initial discovery her counsel entered into settlement discussions with Chinnery; that prior to September 23, 1992, her counsel entered into an oral settlement agreement with Chinnery; that on September 23, 1992, her counsel notified the court that the parties had reached a settlement and that the appropriate papers would be sent to the court upon execution by the parties; that on or about October 16, 1992, her counsel reduced the oral settlement agreement to writing in the form of a settlement agreement and mutual release and forwarded it to Chinnery for execution; that on November 12, 1992, Chinnery forwarded a letter to her counsel informing him that Chinnery was returning the settlement agreement unsigned; and that on February 15, 1993, Chinnery informed her counsel by letter that he "was 'revoking my agreement' to the settlement." Brandenberger contended that the oral agreement, reduced to writing by her counsel, was a binding agreement upon Chinnery; argued that in reliance upon Chinnery's agreement to settle she had set aside all efforts to litigate the matter; and asked the district court to enforce the settlement agreement.

The settlement agreement that had been prepared by Brandenberger's counsel provides in relevant part:

WHEREAS, between May of 1990 and August 1990, defendant Richard C. Chinnery, as agent for Richard C. Chinnery & Associates, Inc., sold to plaintiff a total of One Hundred Thousand Shares of stock in a corporation known as TransGlobal Industries, Inc., for a total purchase price of Fifty Thousand Dollars ($50,000); and

WHEREAS, in the course of said sale, defendant Richard C. Chinnery and Richard C. Chinnery & Associates, Inc. made false representations to Maria Brandenberger; and

WHEREAS, on or about December 3, 1991, Maria Brandenberger filed her petition in the United States District Court for the District of Kansas claiming federal securities fraud, state securities fraud, common law fraud and money damages in the principal amount of Fifty Thousand Dollars ($50,000), plus punitive damages, interest, costs and attorney fees, such action bearing Case No. 91–2447–0; and

WHEREAS, Richard C. Chinnery & Richard C. Chinnery & Associates, Inc. has answered said petition and has denied the validity of the claims set forth therein, and

WHEREAS, the parties are now desirous of settling all matters between them arising out of the District Court action above described and all claims and matters included therein, fully, finally and forever.

NOW, THEREFORE, in consideration of the above and foregoing premises, and for other good and valuable consideration, the receipt and sufficiency which is hereby acknowledged by each of the parties hereto, is mutually agreed as follows:

1. *Admissions.* The parties agree and stipulate that the Court in which this action is pending should execute and enter the Judgment attached hereto as "Exhibit A".[1] By this Judgment, the parties stipulate and agree that the failure of Richard C. Chinnery and Richard C. Chinnery &

Associates, Inc. to disclose matters to Maria Brandenberger and the false statements made by Richard C. Chinnery and Richard C. Chinnery & Associates, Inc. constituted false pretenses, false representations and actual fraud upon Maria Brandenberger, as set forth in the attached Judgment. It is understood that this admission is genuine and substantive, and not done as a matter of form or convenience for any purpose whatsoever.

2. *Settlement.* The parties agree that the judgment on the merits of all of the claims of Maria Brandenberger should be entered in favor of Maria Brandenberger and against Richard C. Chinnery and Richard C. Chinnery & Associates, Inc. forthwith. The Judgment shall be entered in the total amount of Fifty Thousand Dollars ($50,000). The parties further agree that the execution upon the Judgment will be stayed for a period of 18 months from the date of the Judgment.

On April 16, 1993, the district court held a hearing on Brandenberger's motion to enforce the settlement agreement. Brandenberger appeared through counsel and Chinnery appeared pro se. Tim E. Dollar, Brandenberger's attorney who had engaged in the settlement negotiations with Chinnery and who had drafted the settlement agreement, testified at the hearing. Dollar testified that in a letter dated April 5, 1992, Chinnery offered to settle the lawsuit by "offer[ing] a one year, no interest note for the full $50,000 which [Brandenberger] paid for the stock." Dollar stated that Brandenberger did not accept the settlement offer. Dollar testified that he told Chinnery the reason the offer was rejected was because:

we had a petition on file in the Federal District Court claiming fraud, and that, in my opinion, if we were successful in that judgment or on any one of those counts, it would result in a judgment that was nondischargeable in bankruptcy. I advised Mr. Chinnery that what he was offering was our dismissal of our petition and simply a note in the amount of $50,000, and

---

1. The proposed judgment referred to as "Exhibit A" was not included in the documents submitted to this Court.

that upon our dismissal and a note in the amount of $50,000, if that was not paid, my client would simply be in a worse position than they would be had the suit never been filed because, in my opinion, that $50,000 note, if not paid, would be dischargeable in bankruptcy.

Dollar testified that in September 1992 he had further settlement discussions with Chinnery in which he told Chinnery that to settle the matter "it would require an admission of fraud and a judgment for one of those counts, so that I could assure my client that in the event we were unable to collect any money, that it would not be dischargeable in bankruptcy." Dollar stated that Chinnery said he would agree to those terms. Dollar testified that he had authority from Brandenberger to settle the lawsuit, but not on terms that would allow Chinnery to ultimately discharge the debt in bankruptcy.

Chinnery did not testify at the hearing, but in argument to the district court he denied that he had committed fraud and stated that he was not willing to say that he had committed fraud.

After the presentation of evidence, the district court determined that Chinnery had entered into an enforceable oral settlement agreement with Brandenberger, including the admission of fraud. In so holding the district court stated:

You know, neither one of you can afford to litigate this in a court. You really can't. Because if I don't approve this, you're going over before Judge Rushfelt Monday, you're going to have a pretrial and set this case for trial in June. We're going to go through a full jury trial. You stand a chance of getting a judgment against you, which would, if they do get a judgment, it would be on fraud which would not be dischargeable. You're going to get socked, if they would get a judgment, with attorney's fees and all, and I just—you're quibbling about some things here that I don't think either one of you can quibble with.

. . . .

As I understand from what [counsel is] saying is that the fraud part of the settlement would be confidential and remain under seal or just private between you-all

and not be a court document. There would be a judgment entered. If he pays the judgment, that's the end of it and there's no fraud on the record, so to speak. But if he doesn't, it could be a matter of record.

. . . .

So this would never go in the public record as such except that there's a judgment on the petition, and the petition is based on fraud. But you don't admit anything so far as the Court records are concerned, and it's only if you don't pay the $50,000 and, say, would try to take bankruptcy that [Brandenberger] could drag [the settlement agreement] out then and show where you had admitted fraud.

. . . .

If you pay [the $50,000 judgment] in 18 months, that's the end of it. . . . And if you didn't, then, then [Brandenberger] could execute on it. Then if you tried to take bankruptcy, then [Brandenberger] could drag out this admission of fraud. But as of now, there wouldn't even be an admission of fraud, but that you just agreed a judgment could be taken for $50,-000 on the petition.

. . . .

I think this is a good disposition. I really do. I don't think either side can afford to spend any more money on it and certainly if it's paid by Mr. Chinnery, that will be the end of it for sure.

The journal entry of judgment, which was filed on April 27, 1993, states:

In accordance with rulings made by the Court on April 16, 1993,

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that judgment is entered in favor of the plaintiff, Maria Alice Brandenberger, and against the defendants, Richard C. Chinnery and Richard C. Chinnery & Associates, Inc., jointly and severally, in the total sum of $50,000.00 on Count I of plaintiff's complaint. Costs shall be borne by the party incurring them.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that execu-

tion on this judgment shall be stayed for so long as the defendants comply with the terms of the settlement agreement reached between plaintiff and defendants. In the event that defendants should fail to comply with any of the terms of that settlement agreement, then execution may issue on this judgment.

Needless to say, neither Chinnery nor Richard C. Chinnery & Associates, Inc. paid the $50,000 judgment. On October 13, 1994, Chinnery filed a voluntary petition under Chapter 7 of the Bankruptcy Code. In his schedules, Chinnery listed Brandenberger as a creditor holding an unsecured nonpriority claim in the amount of $50,000 for an investment in TransGlobal Industries, Inc. Chinnery further reported that a judgment had been entered against him in the Brandenberger lawsuit discussed above.

The Court established January 9, 1995, as the deadline to file a complaint objecting to discharge of the debtor or to determine the dischargeability of debts under sections 523(a)(2), (a)(4), and (a)(6) of the Bankruptcy Code. On January 6, 1995, Brandenberger filed a complaint objecting to dischargeability of debt under section 523(a)(2)(A).[2] Brandenberger asks the Court to determine that the $50,000 owed to her pursuant to the April 27, 1993, journal entry of judgment entered against Chinnery on count one of her fraud claims is nondischargeable in bankruptcy.

On February 9, 1995, Brandenberger filed a motion for summary judgment. Brandenberger contends that in the settlement agreement Chinnery admitted to the commission of actual fraud and that the doctrine of collateral estoppel applies to prevent Chinnery from relitigating the issue of fraud under section 523(a)(2)(A) in the dischargeability proceeding. Brandenberger asserts that the

$50,000 debt clearly falls within section 523(a)(2)(A) and that the Court must grant summary judgment on her dischargeability complaint and preclude the discharge of this debt. Brandenberger relies on *In re Austin,* 138 B.R. 898 (Bankr.N.D.Ill.1992), to support her position that collateral estoppel applies when the prior action has been resolved by a settlement agreement and that the parties here intended the agreement to have preclusive effect in later proceedings as shown by the agreement itself and by "other evidence."

Brandenberger argues that the settlement agreement is direct evidence of the parties' intent and that the transcript of the April 16, 1993, hearing constitutes "other evidence" that the purpose of including the admission of fraud in the settlement agreement was to prevent relitigation of the fraud issue in bankruptcy. Brandenberger contends that the hearing transcript shows that the parties contemplated that in the event of Chinnery's bankruptcy, "the record could be used to show the bankruptcy judge that there had in fact been a finding made by the trial court of a settlement agreement that included an admission of fraud."

Brandenberger argues that because she currently resides in California she would be "seriously prejudiced if forced to retry the issue of fraud nearly two years after the time the case was ready for trial." Brandenberger asserts that by settling she gave up her right to a jury trial and that she "should not now be punished for settling this matter, particularly where the law encourages settlement." Brandenberger contends that:

> It simply does not make sense that the previous record and findings made by the United States District Court be ignored and defendant be allowed to reopen the

**2.** 11 U.S.C. § 523(a)(2)(A) provides in relevant part that a discharge under section 727 of the Bankruptcy Code does not discharge an individual debtor from any debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." A cause of action under this section may be established by proving:

(1) That the debtor made false representations;

(2) At the time made, the debtor knew them to be false;

(3) That the representations were made with the intention and purpose of deceiving the creditor;

(4) That the creditor relied on the representations; ...

(5) That the creditor sustained the alleged injury as a proximate result of the representations having been made.

*In re Branch,* 158 B.R. 475, 477 (Bankr.W.D.Mo. 1993).

underlying issue with the possibility of discharge as a result of the time period that has transpired. The *Austin* case is directly on point and establishes the proper analysis for the application of collateral estoppel under these circumstances.

In his response, Chinnery contends that the issue of fraud has never been actually litigated in a prior proceeding, that he has a defense to Brandenberger's dischargeability complaint, and that he is entitled to be heard on the merits. Chinnery points out that he was never represented by counsel in Brandenberger's fraud action. Chinnery further asserts that Brandenberger and her counsel have misrepresented and misstated the facts in this case and have not been candid and fair in this Court. Chinnery requests that the Court sanction Brandenberger and her attorneys by awarding him attorney's fees.

In her reply to Chinnery's response, Brandenberger requests an opportunity to be heard on her motion for summary judgment. The Court does not believe that oral arguments by counsel will be of assistance to the Court's decision and denies the request for a hearing. *See* Local Bankruptcy Rule 9.013.G.

### DISCUSSION

Summary judgment is proper whenever there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56; Fed.R.Bankr.P. 7056. "The evidence must be viewed in the light most favorable to the party opposing the summary judgment motion." *In re Huffman*, 171 B.R. 649, 652 (Bankr.W.D.Mo.1994).

The Court denies Brandenberger's motion for summary judgment. The settlement agreement does not collaterally estop Chinnery from litigating the issue of fraud in the dischargeability proceeding for three reasons: 1) the issue of fraud was not actually litigated in the prior district court action; 2) Chinnery was not represented by counsel in Brandenberger's district court fraud action, therefore, Chinnery did not have a full and fair opportunity to litigate the issue of fraud; and 3) because issues of nondischargeability under 11 U.S.C. § 523(a)(2), (a)(4), (a)(6), and (a)(15) are the exclusive province of the bankruptcy court, in this case the Court is not bound by collateral estoppel even if the doctrine technically applies.

1. *The issue of fraud was not actually litigated in the prior district court action.*

In *Wellons, Inc. v. T.E. Ibberson Co.*, 869 F.2d 1166, 1168 (8th Cir.1989), the Eighth Circuit Court of Appeals opined:

> Collateral estoppel is appropriate when: (1) the issue sought to be precluded is identical to the issue previously decided; (2) the prior action resulted in a final adjudication on the merits; (3) the party sought to be estopped was either a party or in privity with a party to the prior action; and (4) the party sought to be estopped was given a full and fair opportunity to be heard on the issue in the prior action.

*See also In re Miera*, 926 F.2d 741, 743 (8th Cir.1991) (Collateral estoppel applies when the issue sought to be precluded was the same as that involved in the prior action; the issue was actually litigated in the prior action; the issue was determined by a valid and final judgment; and the determination was essential to the prior judgment.); *Lovell v. Mixon*, 719 F.2d 1373, 1376 (8th Cir.1983); *In re Mason*, 175 B.R. 299, 302 (Bankr. W.D.Mo.1994).

Collateral estoppel principles do apply in discharge exception proceedings brought under 11 U.S.C. § 523(a). *Grogan v. Garner*, 498 U.S. 279, 284 n. 11, 111 S.Ct. 654, 658 n. 11, 112 L.Ed.2d 755 (1991); *Mason*, 175 B.R. at 302.

The issue here is whether Brandenberger's claim of fraud was actually litigated in the district court action. Brandenberger relies on *In re Austin*, 138 B.R. 898 (Bankr.N.D.Ill. 1992), to support her contention that the issue of fraud was actually litigated even though the prior proceeding was resolved by a settlement agreement between the parties. In *Austin* the relevant facts are the Federal Trade Commission brought an action against the debtor in the United States District Court for the Northern District of Illinois

alleging that the debtor had violated § 5(a) of the Federal Trade Commission Act by falsely representing the authenticity and value of several art lithographs. Subsequently, the debtor stipulated to the entry of a consent decree and permanent injunction. Pursuant to the consent decree, the debtor was required to pay $625,000 into a consumer redress fund to be administered by the FTC. The consent decree further provided that if the debtor failed to pay the full amount due by a specified date, he would be in default and would become liable to the FTC for $1.5 million, due and payable immediately. In conjunction with the consent decree, the parties agreed to a stipulation for judgment that would be entered upon the debtor's default under the consent decree.

The debtor failed to pay the full amount due by the deadline and shortly thereafter filed a petition under Chapter 11 of the Bankruptcy Code. Pursuant to the consent decree, the district court entered judgment against the debtor for $1.5 million and entered the parties stipulation for judgment as part of the order. In the stipulation for judgment, the debtor admitted that the false representations made in the sale of certain artworks constituted " 'unfair or deceptive acts and practices in violation of Section 5(a) of the FTC Act,' " and that as a result of these false representations, "he was individually liable for unfair or deceptive acts or practices in violation of Section 5(a)."

The FTC filed a complaint in the bankruptcy court contending that the $1.5 million judgment against the debtor was nondischargeable under section 523(a)(2)(A) of the Bankruptcy Code. The FTC moved for summary judgment on the grounds that the consent decree and stipulation for judgment col-

laterally estopped the debtor from litigating the issue of whether he knowingly or recklessly made false representations in the sale of the artwork.[3] The bankruptcy court determined that the consent decree and stipulation for judgment met all four of the collateral estoppel requirements with respect to the issue of whether the debtor knowingly or recklessly made false representations regarding the authenticity of certain artworks.[4] The bankruptcy court concluded that by making the foregoing legal admissions in the stipulation for judgment, the debtor "necessarily admitted that he behaved either knowingly or recklessly with respect to the false representations which were made." *Austin,* 138 B.R. at 907.

In addressing the question of whether the "knowingly or recklessly" issue was actually litigated in the prior proceeding the bankruptcy court stated:

> Ordinarily, collateral estoppel operates to preclude relitigation of a factual issue only if the factual issue was "actually litigated" in the prior proceeding, and if the determination of the issue was essential to the final judgment in the prior proceeding. *Klingman,* 831 F.2d at 1295. When the prior proceeding was resolved by consent decree, however, these requirements are modified because issues resolved by consent decree are, by definition, neither litigated nor judicially resolved. *See In re Halpern,* 810 F.2d 1061, 1064 (11th Cir. 1987). The key to determining whether a consent decree collaterally estops a party from relitigating a factual issue resolved therein is whether the parties to the consent decree intended their agreement to have preclusive effect in later proceedings. *Klingman,* 831 F.2d at 1296; *Halpern,* 810

---

3. In the Seventh Circuit in order to establish that a monetary debt is nondischargeable under section 523(a)(2)(A), a creditor must prove:

   1) that the debtor obtained the money through representations which the debtor either knew to be false or made with such reckless disregard for the truth as to constitute willful misrepresentation; 2) that the debtor intended to deceive the creditor; and 3) that the creditor actually and reasonably relied on the debtor's false representations.

   *Austin,* 138 B.R. at 902–03 (citing *In re Kimzey,* 761 F.2d 421, 423 (7th Cir.1985)).

4. The four requirements are:

   1) the issue sought to be precluded must be the same as that involved in the prior action, 2) the issue must have been actually litigated, 3) the determination of the issue must have been essential to the final judgment, and 4) the party against whom estoppel is invoked must [have been] fully represented in the prior action. *Austin,* 138 B.R. at 906 (quoting *Klingman v. Levinson,* 831 F.2d 1292, 1295 (7th Cir.1987)).

F.2d at 1064; 18 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 4443 (1981). [Footnote omitted.]

In *Klingman,* the Seventh Circuit relied on the consent decree's express language as evidence that the parties intended their agreement to have preclusive effect. The consent decree in *Klingman* specifically stated that "in any subsequent proceedings all of the allegations of the Complaint and findings of this Court may be taken as true and correct without further proof." *Id.* Admittedly, there is no similar language in either the Consent Decree or the Stipulation for Judgment between the FTC and Austin. The *Klingman* opinion does not suggest, however, that such explicit language is required to support a finding that the parties intended their stipulations to have preclusive effect. The Eleventh Circuit Court of Appeals, which has adopted virtually the same requirements for collateral estoppel based on a consent decree as the Seventh Circuit, has stated that the parties' intentions regarding a consent decree's preclusive effect may be discerned through the language in the decree or through "other evidence." *Halpern,* 810 F.2d at 1064.

*Id.* at 908–09.

The bankruptcy court determined that "[t]he circumstances surrounding the entry of the Stipulation for Judgment between the FTC and Austin constitutes 'other evidence' that the parties must have intended their stipulations to have preclusive effect." *Id.* at 909. The court stated:

The Consent Decree between the FTC and Austin was entered in April, 1990. This Consent Decree provided, *inter alia,* that Austin would pay the FTC $625,000 "in full satisfaction of all monetary claims asserted by the [FTC]." The Consent Decree therefore terminated litigation of the substantive claim between the FTC and Austin. On the same date, the parties signed the Stipulation for Judgment containing the factual and legal admissions which the FTC argues have preclusive effect in this proceeding. This Stipulation for Judgment was only to take effect, however, if

Austin defaulted on his monetary obligations under the Consent Decree. By the terms of the Consent Decree, default could not occur until January 1, 1991, nearly nine months after the FTC and Austin resolved their substantive dispute. Thus, the admissions contained in the Stipulation for Judgment were clearly not intended to have any effect on the original litigation between the FTC and Austin. The only possible purpose the parties could have had for entering the stipulations was to preclude relitigation of certain issues in a subsequent proceeding.

*Id.*

■ After reading *Austin,* this Court determines that the case follows precedent in the Seventh Circuit that a consent decree entered in a prior district court action may have collateral estoppel effect in a subsequent nondischargeability proceeding brought in bankruptcy court.

Recently, in *Mason,* 175 B.R. at 302–03, which involved a nondischargeability action brought by a creditor against the debtor under 11 U.S.C. § 523(a)(4), this Court pursuant to the full faith and credit clause looked to the laws of Colorado to determine whether under the doctrine of collateral estoppel the Court was required to give preclusive effect to a consent decree entered in a prior Colorado civil suit. Under Colorado law, a consent decree can constitute a final adjudication if the parties intended the consent decree to adjudicate, once and for all, the issues raised in the action. *Id.* The Colorado state court made no clear and certain findings regarding embezzlement in the consent decree, and the parties did not indicate in the consent decree nor did the transcript of the settlement conference show that the parties intended that the consent judgment adjudicate once and for all the issues raised in the civil action. *Id.* at 303. This Court concluded that the Colorado consent decree did not prevent the Court from making an independent inquiry into the nature of the indebtedness. *Id.* at 302.

■ The present situation is distinguishable from *Mason* because the prior action was not brought and concluded in state court,

but was litigated in federal district court in Kansas. Neither counsel for Brandenberger nor counsel for Chinnery have cited the Court to any Tenth Circuit decisions that address the matter at hand, however, this Court would not be bound by Tenth Circuit decisions on the preclusive effect of a consent decree. *See Continental Airlines, Inc. v. American Airlines, Inc.,* 824 F.Supp. 689, 710 (S.D.Tex.1993). The Court "must give appropriate preclusive effect to all judgments of other federal courts," but "to determine which [federal court] decisions are final decisions and therefore entitled to preclusive effect this court must look to federal law." *See id.* This Court is bound to follow the pronouncements of the Eighth Circuit and the Supreme Court and, where neither has spoken, may be guided by the nonbinding decisions of other courts. *See id.*

In *Gall v. South Branch Nat'l Bank of S.D., Sioux Falls S.D.,* 783 F.2d 125, 127 (8th Cir.1986), the Eighth Circuit Court of Appeals opined that the doctrine of collateral estoppel would not apply when the issues sought to be precluded in a subsequent proceeding were determined by a consent judgment. Additionally, "[a] fact established in prior litigation not by judicial resolution but by stipulation has not been 'actually litigated' and thus is the proper subject of proof in subsequent proceedings." *United States v. Young,* 804 F.2d 116, 118 (8th Cir.1986), *cert. denied,* 482 U.S. 913, 107 S.Ct. 3184, 96 L.Ed.2d 673 (1987). In *Gall* and in *Young* the Eighth Circuit Court of Appeals stated that consent judgments and stipulations do not have preclusive effect in subsequent proceedings between the parties. The Court of Appeals did not engage in any discussion regarding whether the parties *intended* the consent judgment or the stipulation to have prospective preclusive effect. The directive from these cases is that in the Eighth Circuit collateral estoppel does not apply to consent judgments or to stipulations.

Another feature that distinguishes this case from both *Austin* and *Mason* is that the prior proceeding was not resolved by a consent decree, but by a settlement agreement and a judgment entered to enforce the settlement agreement. Public policy does encour-

age settlements. *Continental Airlines,* 824 F.Supp. at 709. However, the Court's independent research shows that it appears that the Eighth Circuit would treat a settlement agreement in the same manner as a consent judgment or stipulation and such would not be given preclusive effect in a subsequent proceeding.

In *Missouri–Indiana Inv. Group v. Shaw,* 518 F.Supp. 576 (E.D.Mo.1981), a Missouri limited partnership, Missouri–Indiana Investment Group (MIIG), and its general partner, Robert E. Smith, brought an action against an Indiana partnership, Management of Energy Resources (MER), and its partners, Obie Shaw and Gene Silkey, for injunctive relief, money damages and an accounting arising out of the alleged breach of a contract between the parties. After a three-day bench trial, the district court entered judgment for the defendants. During trial, the facts, in relevant part, revealed that Smith, Shaw, and Silkey had entered into a secret partnership agreement which provided that the three would be equal partners of MER. The evidence showed that Smith was a secret partner in the defendant MER and a general partner in the plaintiff MIIG. The plaintiffs argued before the district court that it had been judicially determined in a prior proceeding in Indiana state court that Smith was not a partner of MER. In support of their argument, the plaintiffs submitted a copy of a civil docket sheet showing the prior case had been dismissed and which stated that "it was *agreed* by the parties that Smith was not a member of [MER]." The plaintiffs contended that the doctrine of collateral estoppel precluded the defendants from asserting that Smith was a partner in MER. The district court rejected the plaintiffs' arguments stating:

> [T]here is no indication that evidence was taken on [whether Smith was a partner of MER].... Since it is clear from the documents submitted by plaintiff that the cause in Indiana Circuit Court never reached final judgment, *that agreements by the parties do not give rise to an estoppel,* and that copies of a docket sheet are not sufficient evidence of court action taken or

findings made as to issues or facts in a lawsuit, an estoppel does not arise here.

*Id.* at 581 (emphasis added).

On appeal, the Eighth Circuit Court of Appeals vacated and remanded the district court's ruling in favor of the defendants, but upheld the district court's decision that collateral estoppel would not preclude the independent determination of Smith's status with MER. *Missouri–Indiana Inv. Group v. Shaw,* 699 F.2d 952 (8th Cir.1983). The plaintiffs argued on appeal that the district court erred by not applying collateral estoppel to hold that Smith was not a partner in MER. The Eighth Circuit found there "was evidence that the Indiana court dismissed the action as to Smith on the agreement of the parties that Smith was not a member of the MER partnership." *Id.* at 955–56. The Eighth Circuit quoted the three reasons given by the district court for rejecting the plaintiffs' collateral estoppel argument, then proceeded to analyze the issue in a slightly different manner. The court looked to Indiana law, which holds that a prior judgment determining an issue in favor of one or more defendants does not collaterally estop relitigation of the issue between the codefendants. The court determined that even if Indiana would retreat from this rule, the prior state court proceeding "did not present a fair opportunity and an appropriate incentive to litigate the issue." *Id.* at 956. In a footnote, the court stated that the "plaintiff does not argue that the agreement itself gives rise to an estoppel apart from the judgment." *Id.* at 956 n. 5. It is clear that the precise issue of the preclusive effect of the agreement between the parties in the prior action was not presented to the Eighth Circuit, but it is important to note that the Eighth Circuit did not disagree with the district court's conclusion that "agreements by parties do not give rise to estoppel." *Id.* at 956.

This Court does not believe that the Eighth Circuit Court of Appeals would give greater deference to a settlement agreement than that given to consent judgments or stipulations. Other courts have held that a settlement agreement cannot give rise to collateral estoppel. *See Rockford Mutual Ins. Co.*

*v. Amerisure Ins. Co.,* 925 F.2d 193, 198 (7th Cir.1991) (no fair and full litigation of any issue occurred); *Imperial Constr. Management Corp. v. Laborers Int'l Union of N. Am. Local 96,* 729 F.Supp. 1199, 1207 (N.D.Ill.1990) ("Issues which were not contested in the prior proceeding cannot serve as a basis for collateral estoppel."); *Annaco, Inc. v. Hodel,* 675 F.Supp. 1052, 1058 (E.D.Ky.1987) (A settlement agreement attained after discussions between the parties "does necessitate negotiation, so that neither side would have pursued its position as vigorously as in an adversarial proceeding. Therefore the issues did not receive a full and fair litigation.").

Further, when "there is any doubt as to whether a specific issue was actually litigated, collateral estoppel is inappropriate." *Jose v. M/V Fir Grove,* 765 F.Supp. 1024, 1036 (D.Or.1991).

The Court determines that because the previous district court lawsuit was resolved by a settlement agreement, the fraud issue was not actually litigated in the prior action. Chinnery is not collaterally estopped from litigating the issue of fraud in the present nondischargeability proceeding.

*2. Chinnery was not represented by counsel in the prior action.*

■ It is undisputed that Chinnery was not represented by counsel at any stage of the prior district court action. Collateral estoppel does not apply unless " 'the party against whom the earlier decision is being asserted had a "full and fair opportunity" to litigate the issue in question.' " *United States Envtl. Protection Agency v. City of Green Forest, Ark.,* 921 F.2d 1394, 1394 (8th Cir.1990), *cert. denied, Work v. Tyson Foods, Inc.,* 502 U.S. 956, 112 S.Ct. 414, 116 L.Ed.2d 435 (1991) (quoting *Lovell v. Mixon,* 719 F.2d 1373, 1376 (8th Cir.1983)). The Eighth Circuit Court of Appeals has acknowledged that because a litigant appeared pro se in a prior criminal action in which she was convicted for disturbing the peace, she did not have a full and fair opportunity to litigate the issue of unlawful arrest in the criminal case, and, therefore, the doctrine of collateral estoppel did not prevent her from litigating that issue

in her subsequent civil action based upon 42 U.S.C. § 1983. *Davis v. City of Charleston, Mo.*, 827 F.2d 317, 321 n. 3 (8th Cir.1987).

Many courts require that in order for collateral estoppel to apply, the party against whom estoppel is invoked must have been fully represented in the prior proceeding. *See, e.g., McCandless v. Merit Sys. Protection Bd.*, 996 F.2d 1193, 1198 (Fed.Cir.1993); *Mother's Restaurant, Inc. v. Mama's Pizza, Inc.*, 723 F.2d 1566, 1569 (Fed.Cir.1983); *Martin v. United States*, 30 Fed.Cl. 542, 546 (Fed.Cl.1994), *aff'd*, 41 F.3d 1519 (Fed.Cir. 1994); *Koppie v. Busey*, 832 F.Supp. 1245, 1255 (N.D.Ind.1992), *aff'd, Koppie v. United States*, 1 F.3d 651 (7th Cir.1993); *Austin*, 138 B.R. at 909.

Here, there is no evidence before the Court that Chinnery is an attorney or is otherwise sophisticated and knowledgeable in legal matters. Because Chinnery represented himself pro se in the prior Kansas district court action, he did not have a full and fair opportunity to litigate the issue of fraud. The Court concludes that collateral estoppel does not apply to prevent Chinnery from litigating the issue of fraud before this Court.

*3. Here, because exclusive jurisdiction to determine dischargeability under section 523(a)(2) rests with the bankruptcy court, this Court is not bound by collateral estoppel even if the doctrine technically applies.*

■ The Bankruptcy Code confers exclusive jurisdiction on the bankruptcy court to determine dischargeability based on sections 523(a)(2), (a)(4), (a)(6), and (a)(15). 3 Norton Bankruptcy Law and Practice 2d, § 47:59 (1994 & Supp.1995). The use of collateral estoppel in dischargeability proceedings under the foregoing sections of the Bankruptcy Code must be applied with great care. *In re Olson*, 170 B.R. 161, 165 (Bankr.D.N.D.1994). A central policy of the Bankruptcy Code is to provide the honest, but unfortunate debtor with a "fresh start." The Bankruptcy Code provides "a procedure by which certain insolvent debtors can reorder their affairs, make peace with their creditors, and enjoy 'a new opportunity in life with a clear field for future effort, unhampered by the pressure and

discouragement of preexisting debt.' " *Grogan v. Garner*, 498 U.S. at 286, 111 S.Ct. at 659. "The federal policies underlying a bankruptcy discharge ... buttress the view that the issues necessary for issue preclusion be addressed with particular caution." *Olson*, 170 B.R. at 166. "Indeed, the policy considerations attendant a bankruptcy discharge weigh strongly in favor of nonpreclusion." *Id.*

The Court determines that even if collateral estoppel technically applies in this situation, the special rules that govern the determination of dischargeability of debts under sections 523(a)(2), (a)(4), (a)(6), and (a)(15) preclude the use of collateral estoppel here. *See In re Daley*, 776 F.2d 834, 838 (9th Cir.1985), *cert. denied Daley v. Frank*, 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986). In *Daley* the Ninth Circuit Court of Appeals concluded that since the prior Arizona district court action was dismissed with prejudice pursuant to a stipulation between the parties, the fraud claims were not actually litigated and collateral estoppel would not prevent the bankruptcy court from making an independent inquiry under sections 523(a)(2), (a)(4), and (a)(6). *Id.* The Ninth Circuit further determined that even if collateral estoppel technically applied, the bankruptcy court had exclusive jurisdiction to determine the issue of nondischargeability, which precluded the use of collateral estoppel in the case. *Id.* The *Daley* court quoted *In re Houtman*, 568 F.2d 651, 653–54 (9th Cir. 1978):

[t]he 1970 Amendments to the Bankruptcy Act imposed upon the bankruptcy courts the exclusive jurisdiction to determine dischargeability. *As we read those Amendments there is no room for the application of the technical doctrine of collateral estoppel in determining the nondischargeability of debts described in section 17(a)(2), (4), and (8) of the Bankruptcy Act* [now sections 523(a)(2), (a)(4), and (a)(6) of the Bankruptcy Code]. This does not mean that the documents which officially enshrine the state court proceedings may not be considered by the bankruptcy judges as establishing the nondischargeability of a debt. *What is required is that the bank-*

*ruptcy court consider all relevant evidence,* including the state court proceedings, that is offered by the parties, or requested by the court, and on the basis of that evidence determine the nondischargeability of judgment debts which the creditors contend are described in section 17(a)(2), (4), and (8).

*Id.* at 838–39 (emphasis in original).

After the Ninth Circuit decided *Daley,* the United States Supreme Court stated in *Grogan v. Garner,* 498 U.S. at 285, 111 S.Ct. at 658 n. 11, that collateral estoppel principles do apply in dischargeability proceedings. However, the Supreme Court did not mandate that a bankruptcy court must invoke collateral estoppel in every situation to which the doctrine may apply. In deciding which standard of proof applies to the exceptions from dischargeability of debts, the Supreme Court opined that if the preponderance of the evidence standard governed in both the prior action and the dischargeability proceeding, then "a bankruptcy court *could* properly give collateral estoppel effect to those elements of the claim that are identical to the elements required for discharge and which were actually litigated and determined in the prior action." *Grogan v. Garner,* 498 U.S. at 284, 111 S.Ct. at 658 (emphasis added).

The Court will not give collateral estoppel effect to the settlement agreement, but certainly will not ignore what transpired between the parties in the prior Kansas district court action. During the trial of this proceeding, the Court will consider the settlement agreement along with all other relevant evidence in making a determination as to nondischargeability of the debt to Brandenberger.

The Court denies Brandenberger's motion for summary judgment. The settlement agreement between the parties does not preclude Chinnery under the doctrine of collateral estoppel from litigating the issue of fraud in this dischargeability proceeding. Because the prior district court action was concluded by a settlement agreement between the parties, the issue of fraud was not actually litigated in the prior action. Chinnery was not represented by counsel in the previous action and, therefore, did not have a full and fair opportunity to litigate the fraud issue. Finally, because issues of nondischargeability under 11 U.S.C. § 523(a)(2), (a)(4), (a)(6), and (a)(15) are the exclusive province of the bankruptcy court, in this situation the Court is not bound by collateral estoppel even if the doctrine technically applies.

The Court finds no basis upon which to sanction Brandenberger or her counsel. The Court denies Chinnery's request for attorney's fees.

### CONCLUSION

Based on the above discussion, Maria Brandenberger's motion for summary judgment is DENIED. Richard Chinnery's request for attorney's fees is DENIED.

The foregoing Memorandum Order constitutes Findings of Fact and Conclusions of Law as required by Fed.R.Bankr.P. 7052.

So ORDERED.